## J. V. H. Cook, Rowley Cook and S. C. Cook *v.* George A. Berry and I. N. Patterson, Appellants.

*Deed—Mortgage—Principal and surety.*

When real property has been conveyed subject to a mortgage, with a condition in the deed requiring the grantee to assume payment of the mortgage, such grantee by the acceptance of the deed impliedly covenants to pay the mortgage debt, and thus becomes personally liable to the mortgagee for such payment. He takes upon himself the burden of the debt secured by the mortgage, and as between him and his grantor he becomes principal, and the latter a surety for the payment of the debt.

A corporation which owed M. $6,000, for which C.'s liability as surety was evidenced by a bond and mortgage, borrowed the money from B., with which it paid the bond, giving P., one of its stockholders, as surety for the loan, and procuring an assignment of the bond and mortgage as further security. The corporation became insolvent, and P. was compelled to pay B. part of this loan. *Held*, that the payment of the debt to M. was a full discharge of the bond and mortgage and a release of C., and that, therefore, P. had no redress from C., personally, and no right to a decree that the mortgage should be kept alive for his benefit.

Argued Oct. 18, 1899. Appeal, No. 160, Oct. T., 1899, by defendants, from decree of C. P. Washington Co., No. 996, in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel the satisfaction of a mortgage.

The facts appear by the opinion of McILVAINE, P. J., which was as follows:

### DECISION.

The requests of the plaintiffs for findings of fact are all sus-

tained by the testimony submitted at the hearing, and for the court to express its findings in its own and other language would duplicate the findings of fact and unnecessarily lengthen the record; we therefore adopt these findings verbatim, and they are:

### FACTS FOUND.

1. The plaintiffs, having acquired the equitable title to the Enterprise Coal Works (a tract of coal lands situate in South Strabane township, containing about 340 acres of coal and about 15 acres of surface, with the appurtenances), by articles of purchase thereof from V. Harding, dated August 25, 1887, executed and delivered on December 11, 1888, their bond and mortgage in the sum of $6,000, payable in three years from the date thereof, with interest from date, • to Mrs. Mary J. Irwin; the said Harding joining in said bond and mortgage as the surety of the plaintiffs, and to bind his legal title to said coal works.

[2. On November 15, 1889, the said Harding conveyed the said coal works to the plaintiffs, and the same day the plaintiffs executed and delivered to the said Harding their two bonds, to wit: One (*a*) in the sum of $10,650, conditioned for the payment by the plaintiffs inter alia of the debt of $6,000 secured to Mary J. Irwin as aforesaid, and the other (*b*) in the sum of $48,000, conditioned for the payment by the plaintiffs to said Harding of $24,000, balance of purchase money, with interest from March 1, 1892, with their mortgage upon the coal works so conveyed to them, securing to said Harding the payment of both said bonds (*a*) and (*b*) herein mentioned.] [1]

[3. On November 28, 1889, a judgment was entered against said plaintiffs upon their note with warrant of attorney for money borrowed, executed and delivered to James McIlvaine, now deceased, in the sum of $2,000, with interest from November 26, 1889; the parties to said note, with said V. Harding, postponing the lien of said mortgage to Harding in paragraph 2 hereof mentioned, to the lien of the said judgment, which thereupon became a lien next after the lien of the mortgage to Mary J. Irwin, in paragraph 1 hereof mentioned.] [2]

[4. On March 2, 1891, the plaintiffs, by deed of said date, in consideration of the sum of $51,000, conveyed the said coal

works in paragraph 1 hereof described to the Pittsburg & Belle-vernon Coal Company, a corporation organized under the laws of Pennyslvania, having its principal office at Pittsburg, Pennsylvania; said deed providing that the said lands were taken "subject to the payment by the said party of the second part of a mortgage debt of $6,000 created by the said J. V. H. Cook and V. Harding, as his surety," in favor of M. J. Irwin; "and further, also, subject to the lien of a mortgage in the sum of $25,500 in favor of said V. Harding; and further, also, sub-ject to the lien of a judgment in favor of Jas. McIlvaine; said liens aggregating the sum of $33,500, the payment of which is hereby assumed by the Pittsburg & Bellevernon Coal Com-pany upon the said purchase money consideration of $51,000;" the said mortgage debt to said Irwin of $6,000, that to V. Harding of $25,500, and the judgment debt for $2,000 to Jas. McIlvaine were the same as in paragraphs 1, 2 and 3 hereof mentioned.] [3]

5. On February 27, 1892, said bond and mortgage for $6,000 were assigned by Thos. S. Stewart, administrator of Mary J. Irwin, then deceased, to Ella B. Black, and on November 3, 1893, said bond and mortgage were assigned by Ella B. Black to John Runnette; and the interest accruing thereon after March 2, 1891, to November 3, 1893, was paid when due by the said coal company.

[6. The assignment of said bond and mortgage for $6,000 to said John Runnette on November 3, 1893, was executed and accepted under the following circumstances, to wit: On said date the Metropolitan National Bank, of which said John Run-nette was president, discounted for the Pittsburg & Bellever-non Coal Company a note of said date for $6,000 for thirty days, made by Hugh Ferguson, who was vice president of said Pitts-burg & Bellevernon Coal Company, to the order of the said Pittsburg & Bellevernon Coal Company, indorsed by the said coal company, and by Chas. Hook, who was president of said coal company, and by Justus Hess and Wm. M. Verner, stock-holders and directors of said coal company, and placed the pro-ceeds of the said note to the credit of the said Pittsburg & Bellevernon Coal Company; the said bond and mortgage for $6,000 were then assigned to said Runnette, president of said bank, at the request of Charles Hook, president of said coal

company, to secure to said bank the payment of said note ; and
the proceeds of said note, thus placed to the credit of the said
Pittsburg & Bellevernon Coal Company, were the same day
paid to said Ella B. Black to procure said assignment of the
said bond and mortgage.] [4]

[7. On December 5, 1893, the said note discounted for $6,000
in the Metropolitan National Bank having matured, a note for
a like amount of said date, for four months, made by Hugh
Ferguson, the vice president of the Pittsburg & Bellevernon
Coal Company, to the order of Charles Hook, the president of
the said coal company, indorsed by the said Charles Hook and
the Pittsburg & Bellevernon Coal Company, was discounted
by the Citizens' National Bank of Pittsburg, Pennsylvania, and
the proceeds thereof placed to the credit of the Pittsburg &
Bellevernon Coal Company, the last indorser, in the account of
said company in said bank ; and the same day these proceeds
were checked out by one check, made by the Pittsburg & Belle-
vernon Coal Company, and were used the next day, Decem-
ber 6, 1893, to pay the said note for $6,000, held by the Metro-
politan National Bank, when the said bond and mortgage for
$6,000 were assigned by said John Runnette to Geo. A. Berry,
who was president of the said Citizens' National Bank, in trust
for the said Citizens' National Bank to protect said note dis-
counted by said bank.] [5]

[8. None of the plaintiffs, J. V. H. Cook, Rowley Cook and
Samuel C. Cook, nor V. Harding, ever had knowledge of or
were consulted with as to any of the assignments of said bond
and mortgage set forth in the preceding paragraphs, that by
Mary J. Irwin to Ella B. Black on February 27, 1892 ; that by
Ella B. Black to John Runnette on November 3, 1893, and that
by John Runnette to Geo. A. Berry on December 6, 1893.] [6]

9. Prior to December 30, 1895, several payments aggregating
$4,000 had been made by the said Pittsburg & Bellevernon
Coal Company upon the said note for $6,000, discounted by the
Citizens' National Bank, and renewals for the balance at each
time of renewal given ; and, on said date, and as a renewal for
$2,000 of the original note then remaining unpaid, the said
Pittsburg & Bellevernon Coal Company made its note for said
balance of said date, at four months, to the order of I. N. Pat-
terson, one of the defendants, which said note was indorsed by

said I. N. Patterson, the said Charles Hook, and the said Pittsburg & Bellevernon Coal Company, and delivered to the said Citizens' National Bank. Said last mentioned note was paid and lifted by said I. N. Patterson on July 18, 1896, the debt, interest and protest fees then amounting to $2,026.60.

[10. On March 5, 1896, the said Pittsburg & Bellevernon Coal Company having become insolvent, Samuel M. McElroy and Geo. W. Darr were appointed receivers of the assets, etc., thereof, and it was so proceeded in that on March 4, 1898, under authority and confirmation of the said court, the said receivers sold the Enterprise Coal Works property bound by said mortgage to Mary J. Irwin, in paragraph one hereof described, to J. V. Morris for the sum of $10.00, but "subject to all prior liens thereon;" said liens then unsatisfied upon the records, including the mortgage to Mary J. Irwin, described in paragraph 1 hereof, the Jas. McIlvaine judgment, described in paragraph 3 hereof, against said coal company terre-tenant, and including also the mortgage to Harding, described in paragraph 2 hereof, with other subsequent liens entered and filed against the said coal company, aggregating about $56,622.25.] [7]

11. On or about February 20, 1898, before said receiver's sale of said coal works to said J. V. Morris, the plaintiffs made demand of said Geo. A. Berry for the surrender and satisfaction of the said bond and mortgage for $6,000 made to said Mary J. Irwin; but the same was refused, on the ground that the said I. N. Patterson claimed the benefit of the protection thereof for his payment of the debt and interest upon the said note for $2,000 dated December 30, 1895, and lifted by him on July 18, 1896.

[12. On April 16, 1898, at a sheriff's sale, the said Enterprise Coal Works property, made by virtue of execution process upon the judgment of James McIlvaine (revived to the use of John H. Murdoch, administrator of Wm. Davis, against the said coal company, terre-tenant), was sold to the plaintiffs herein, who were compelled to become the purchasers to protect themselves against their personal liability upon their said bonds to M. J. Irwin and V. Harding, respectively, described in paragraphs 1 and 2 hereof; and the plaintiffs, receiving the sheriff's deed for said coal works, duly acknowledged and delivered on May 13,

1898, entered into possession and have since then been and now are the owners of the said coal works property.] [8]

## CONCLUSIONS OF LAW.

[1. The full amount of the bond and mortgage which the plaintiffs in their second prayer seek to have surrendered and canceled having been paid on December 6, 1893, to the Metropolitan National Bank, the then holders of it, at the instance of the Pittsburg & Bellevernon Coal Company, and with money that it had borrowed from the Citizens' National Bank, and which had been placed to its credit on the books of said bank, George A. Berry, one of the defendants, and president of said last named bank, could not, in law or equity, take and hold an assignment of said bond and mortgage for the benefit of the accommodation makers or indorsers of the note given to the Citizens' National Bank for the money borrowed and used in paying the Metropolitan National Bank. Such payment, in equity, was a payment and a full discharge of the bond and mortgage debt, and released the plaintiffs personally, and the land covered by said mortgage, from liability.] [9]

[2. That the plaintiffs are entitled to the relief prayed for.] [10]

### REASONS IN SUPPORT OF OUR CONCLUSIONS OF LAW.

When the Pittsburg & Bellevernon Coal Company, a corporation, took title to the land covered by the mortgage in question, it expressly assumed, as part payment of the purchase money, the payment of the debt to secure which this mortgage and the accompanying bond were given, and such assumption of said debt, as between the said company and the mortgagors (the plaintiffs in this case), made the Pittsburg & Bellevernon Coal Company the principal debtor, and the plaintiffs sureties. As stated in 3 Pomeroy's Equity, sec. 1206: "The grantee (the coal company) became the principal debtor, primarily liable for the debt, and the mortgagors (the plaintiffs) became the sureties, with all the consequences flowing from the relation of suretyship." In 1 Beach's Modern Equity Juris. sec. 455, we find the principle stated in this way: "When real property has been conveyed subject to a mortgage, the condition in the deed requiring the grantee to assume payment of such mort-

gage, it is held that such grantee by the acceptance of the deed impliedly covenants to pay the mortgage debt and thus becomes personally liable to the mortgagee for such payment. He takes upon himself the burden of the debt secured by the mortgage, and as between him and his grantor, he becomes principal and the latter a surety, for the payment of the debt."

We take it that this rule of equity cannot be successfully controverted, and we pass to its application to the facts in this case. The testimony, to our mind, clearly justifies the finding that the Pittsburg & Bellevernon Coal Company, with its own money, paid to John Runnette, who held by assignment the bond and mortgage of the plaintiffs in trust for the Metropolitan National Bank, the full amount of the mortgage debt, and was entitled to the possession of the bond and mortgage to be canceled as paid obligations. Let us see what the transaction was. The Metropolitan National Bank, it is true, held the note of the Pittsburg & Bellevernon Coal Company for $6,000 upon which money was advanced when the previous holder of the bond and mortgage, Ella B. Black, was paid the amount thereof; but it is also true that the bank held the bond and mortgage of the plaintiffs only as a security for the payment of this note; or if not, then they held the note as security for the payment of the mortgage. The principal debtor in both the note and the bond and mortgage was the Pittsburg & Bellevernon Coal Company, and the payment of $6,000 to the Metropolitan National Bank would fully satisfy all claims that it had by reason of being the holder of the note and the bond and mortgage. There was but one debt of $6,000; and it follows that if the Pittsburg & Bellevernon Coal Company paid the $6,000 to the bank, the payment not only discharged the debt but entitled the coal company to the possession of the note and also the bond and mortgage. When this note came due the Pittsburg & Bellevernon Coal Company had no money and the Metropolitan National Bank would not extend the time of payment. The company applied to the Citizens' National Bank for a loan, it was successful in obtaining it, and an accommodation note was discounted by the bank. Mr. McElroy, the cashier, after examining the bank books, says that " the proceeds of a note of $6,000 were credited to the Pittsburg & Bellevernon Coal Company on December 5, 1893, and on the same day the account was

charged with a check of $6,000." It was undoubtedly the coal company's money obtained on an accommodation note that paid the Metropolitan National Bank its $6,000. And a part of a renewal note of this very $6,000 note is what the defendant I. N. Patterson claims he, as indorser for the coal company, paid. Now, what further was done when the Pittsburg & Bellevernon Coal Company placed this accommodation note in the Citizens' National Bank to obtain the money with which it paid the Metropolitan National Bank. The Pittsburg & Bellevernon Coal Company agreed with the Citizens' National Bank that the bond and mortgage, which it undoubtedly would be entitled to receive from the Metropolitan National Bank when it paid that bank its $6,000, should be kept alive and assigned by John Runnette, for the Metropolitan National Bank, to the Citizens' National Bank as a security for the payment of this accommodation note. That the Pittsburg & Bellevernon Coal Company procured the assignment to be made by John Runnette to the Citizens' National Bank there can be no doubt. Mr. Patterson, one of the defendants, in his testimony says: "I was attorney for the company; I drew the assignment; Mr. Runnette came into my office, he acknowledged it in my office, and Mr. Runnette and I went down to the Citizens' National Bank. I handed Mr. Berry the mortgage and the bond with the assignment on it, also the assignment of the mortgage, which I told him I would send to Washington county and have recorded." In other words, the real transaction was this: the coal company borrowed $6,000 from the Citizens' National Bank on an accommodation note, the Metropolitan National Bank was paid its $6,000 claim and turned over the bond and mortgage to the Pittsburg & Bellevernon Coal Company, which was entitled to them, because it, as principal, owed the mortgage debt and had paid it; but to keep them alive, so the coal company could use the plaintiffs as its sureties to the Citizens' Bank, without their knowledge or consent, Mr. Runnette was asked and consented to assign the bond and mortgage to George A. Berry in trust for the Citizens' National Bank. That this transaction amounted in equity to a discharge of the plaintiffs, the makers of the bond and mortgage, and that the assignment of the bond and mortgage to the Citizens' National Bank as collateral security for the payment of the Pittsburg & Bellevernon

Coal Company's note was a nullity, we think there can be no doubt. Referring again to 3 Pomeroy's Equity, sec. 1213, we find these words: "If payment of the mortgage is made to the mortgagee or the other holder of the mortgage by a party who is himself personally and primarily liable for the debt, who is in any manner and by any means the actual primary debtor whose duty it is to pay the debt absolutely and before all others, such payment operates ipso facto as an end of the mortgage and the lien is completely destroyed. The party so paying is not subrogated to the rights of the mortgagee; there is no equitable assignment to him of the mortgage security; even if he should receive a formal assignment, the mortgage could not be thus kept alive, but would be wholly merged and ended." If, then, George A. Berry, one of the defendants, took no title to the bond and mortgage by the assignment, does the other defendant, I. N. Patterson, stand in any better position? Or is he, as he claims, entitled to subrogation, and should the bond and mortgage, in equity, be assigned to him to the extent of his payments as indorser for the Pittsburg & Bellevernon Coal Company?

The original note, dated December 5, 1893, given to the Citizens' National Bank for $6,000, to secure the payment of which the bond and mortgage were assigned to George A. Berry in trust, was not paid at maturity, but was renewed from time to time. Mr. Patterson was not an indorser on the original note. It was a note made by Hugh Ferguson, payable to the order of Charles Hook, and indorsed by Charles Hook and the Pittsburg & Bellevernon Coal Company. When one of the times for renewal came, to wit: on August 13, 1894, Mr. Hugh Ferguson was not at home, and by agreement of the bank the defendant I. N. Patterson was substituted; that is, a note of that date for $4,000, with Charles Hook as maker, I. N. Patterson payee and first indorser, and the Pittsburg & Bellevernon Coal Company as last indorser, was given to the bank,—$2,000 having been previously paid by the coal company on the original indebtedness; then on December 17, 1894, a renewal note for $3,500 was made by Charles Hook to the order of I. N. Patterson and indorsed by him and the coal company,—$500 having been paid by the company; then on April 22, 1895, a renewal note of $3,000 was made by the Pittsburg & Bellevernon Coal

Company, indorsed by I. N. Patterson, Charles Hook and the Pittsburg & Bellevernon Coal Company,—$500 having been paid by the coal company; then August 26, 1895, a renewal note for $2,500 was made by the Pittsburg & Bellevernon Coal Company, indorsed by I. N. Patterson, Charles Hook and the Pittsburg & Bellevernon Coal Company,—$500 having been paid by the coal company; then on December 30, 1895, a renewal note of $2,000 was made by the Pittsburg & Bellevernon Coal Company, indorsed by I. N. Patterson, Charles Hook and the Pittsburg & Bellevernon Coal Company,—$500 having been paid by the coal company; May 3, 1896, this note was protested for nonpayment, and on July 18, 1896, was paid to the bank by I. N. Patterson, the first indorser, the amount paid being $2,026.65. Mr. Patterson claims that he should in equity have an assignment from George A. Berry of the bond and mortgage to the extent of this payment.

There is no doubt of the existence of the principle of equity which the counsel for the defendant here invokes; that is, that where the surety pays the debt of his principal debtor he is entitled to an assignment of any collateral security which the creditor to whom he paid the money holds, or, in other words, he is to be subrogated to the rights of the creditor to this collateral security. But if George A. Berry in trust had no right to use this collateral security, then I. N. Patterson would have none. And surely it cannot be claimed that Mr. Patterson is in any better position than Mr. Berry,—that he was an innocent indorser who through the fault of the plaintiffs relied for protection on what seemed on its face to be a good collateral security. He was the attorney for the Pittsburg & Bellevernon Coal Company; he was also a stockholder and director in the company. He drew the assignment of the bond and mortgage to George A. Berry. Acting for the Pittsburg & Bellevernon Coal Company he supervised the making of the loan from the Citizens' National Bank. He knew that the debt secured by the bond and mortgage was the debt of the Pittsburg & Bellevernon Coal Company, and that if it was once paid by his company that payment would fully discharge the plaintiffs in this case from all liability under the bond and mortgage. Under these facts, how can the equitable principle that protects a paying surety be invoked. I. N. Patterson was a surety of the

Pittsburg & Bellevernon Coal Company, it is true, but so were the plaintiffs, and Patterson knew it, because he was both a stockholder and director in the company. Subrogation is "a mode of relief which equity adopts to force the final satisfaction of a debt by him who is primarily liable."

To strip the case of the intervening assignees of this bond and mortgage, we have substantially this case: The Pittsburg & Bellevernon Coal Company owed Mary J. Irwin $6,000; J. V. H. Cook and others are the company's sureties, and their liability is evidenced by a bond and mortgage. The coal company borrows from the Citizens' National Bank $6,000 on a note with I. N. Patterson as surety, and with it pays Mary J. Irwin her claim. Time goes by and $2,000 of the $6,000 note held by the Citizens' National Bank is not paid, and I. N. Patterson, the surety, is compelled to pay it. He now wants the sureties of the coal company for the payment of the mortgage debt, to reimburse him, a stockholder of the company, and a court of equity to decree that the bond and mortgage of J. V. H. Cook and others given to Mary J. Irwin is still alive and that $2,026.65 of it should be assigned to him; the inequity, and not the equity, of such a decree as is here asked is apparent. Under the evidence in the case a claim that John Runnette for the Metropolitan National Bank, and George A. Berry for the Citizens' National Bank were bona fide purchasers of the bond and mortgage in question, as we have said, is wholly untenable. The money that both the banks paid out was money that was loaned to the Pittsburg & Bellevernon Coal Company. The mortgage debt was paid by the coal company's money, and the successive holders of the mortgage, after it was paid, simply tried to keep it alive as a security. This they could not do, at least without the consent of the plaintiffs.

In our opinion the plaintiffs are entitled to the relief prayed for. Let a decree be drawn accordingly.

The court decreed:

[1. That the defendants, George A. Berry and I. N. Patterson, surrender or cause to be surrendered to the plaintiffs, J. V. H. Cook, Rowley Cook and Samuel C. Cook, for cancelation, the bond of the said plaintiffs and V. Harding, dated December 11, 1888, in $12,000, conditioned for the payment of

$6,000 to Mary J. Irwin, in three years from the date thereof, and the mortgage of the said obligors to the said obligee of said date securing said bond; and that the said George A. Berry enter or cause to be entered upon the record of said mortgage the full satisfaction and discharge thereof.

2. That the said defendants pay the costs of this cause.] [11]

*Errors assigned* were (1–8) above findings of fact, quoting them; (9, 10) above conclusions of law, quoting them; (11) decree of the court, quoting it.

*H. M. Dougan*, with him *Thos. C. Lazear, Chas. P. Orr, I. N. Patterson* and *Alex. A. Patterson*, for appellants.—A mortgage may be kept alive, even after payment in full, if such were the intention of the parties, or if there are interests which require it, for their protection: Loverin, Hall & Co. v. Humbolt Safe Deposit & Trust Co., 113 Pa. 6; Meigs v. Bunting, 141 Pa. 239.

A paying surety is entitled to the benefit of all collateral securities protective of the debt paid by him which are held by the creditors: Ramsey v. Westmoreland Bank, 2 P. & W. 203; Kinley v. Hill, 4 W. & S. 432; Gossin v. Brown, 11 Pa. 527; Graff & Co.'s Est., 139 Pa. 76; Kuhns v. Westmoreland Bank, 2 Watts, 136; Klopp v. Lebanon Bank, 46 Pa. 88; Bank v. Tumbler Co., 172 Pa. 615; Newman v. Elinton, 1 Phila. 357.

*Boyd Crumrine*, with him *E. E. Crumrine*, for appellee, cited 2 Beach on Modern Eq. Jurisprudence, sec. 797; Mosier's App., 56 Pa. 76; Hoover v. Epler, 52 Pa. 522; Springer v. Springer, 43 Pa. 518; Moody v. Moody, 68 Me. 155; Wilson v. Burton, 52 Vt. 394; Dickason v. Williams, 129 Mass. 182; Brewer's App., 104 Pa. 417; Shea's Pet., 4 Pa. Dist. Rep. 206; Felt v. Cook, 95 Pa. 247; Riddle's App., 104 Pa. 171; Melan v. Smith, 134 Pa. 649; German-American Title & Trust Co. v. Shallcross, 147 Pa. 485; Treftz v. King, 74 Pa. 350; Guaranty Trust & Safe Deposit Co. v. Powell, 150 Pa. 16.

PER CURIAM, October 30, 1899:

The decree from which this appeal is taken was fully warranted by facts correctly found by the trial judge.

The first eight specifications charge error in the findings of fact therein respectively recited. The subjects of complaint in the remaining specifications are the conclusions of law drawn from the facts thus found. A careful consideration of the pleadings and evidence has satisfied us that none of said specifications should be sustained. The substantial correctness of the court's findings of fact and conclusions of law is so fully vindicated in the opinion of its learned president that it is unnecessary for us to add anything thereto. The decree is therefore affirmed on his opinion and the appeal is dismissed at appellants' costs.